# SUPREME COURT OF THE UNITED STATES

---

No. 25A11

---

## DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES, ET AL. *v.* MARY BOYLE, ET AL.

### ON APPLICATION FOR STAY

[July 23, 2025]

The application for stay presented to THE CHIEF JUSTICE and by him referred to the Court is granted. The application is squarely controlled by *Trump* v. *Wilcox*, 605 U. S. ___ (2025). Although our interim orders are not conclusive as to the merits, they inform how a court should exercise its equitable discretion in like cases. The stay we issued in *Wilcox* reflected "our judgment that the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Ibid.* (slip op., at 1). The same is true on the facts presented here, where the Consumer Product Safety Commission exercises executive power in a similar manner as the National Labor Relations Board, and the case does not otherwise differ from *Wilcox* in any pertinent respect.

The June 13, 2025, order of the United States District Court for the District of Maryland, No. 8:25–cv–01628, ECF Doc. 25, is stayed pending the disposition of the appeal in the United States Court of Appeals for the Fourth Circuit and disposition of a petition for a writ of certiorari, if such a writ is timely sought. Should certiorari be denied, this stay shall terminate automatically. In the event certiorari is granted, the stay shall terminate upon the sending down of the judgment of the Court.

JUSTICE KAVANAUGH, concurring in the grant of the application for stay.

I agree with the Court's decision to grant a stay in this case, as in *Trump* v. *Wilcox*, 605 U. S. ___ (2025). In addition to granting a stay, I would have granted certiorari before judgment in this case or in *Wilcox*.

When an emergency application turns on whether this Court will narrow or overrule a precedent, and there is at least a fair prospect (not certainty, but at least some reasonable prospect) that we will do so, the better practice often may be to both grant a stay and grant certiorari before judgment. In those unusual circumstances, if we grant a stay but do not also grant certiorari before judgment, we may leave the lower courts and affected parties with extended uncertainty and confusion about the status of the precedent in question. Moreover, when the question is whether to narrow or overrule one of this Court's precedents rather than how to resolve an open or disputed question of federal law, further percolation in the lower courts is not particularly useful because lower courts cannot alter or overrule this Court's precedents. In that situation, the downsides of delay in definitively resolving the status of the precedent sometimes tend to outweigh the benefits of further lower-court consideration.

So it is here. Therefore, I not only would have granted a stay but also would have granted certiorari before judgment.

# SUPREME COURT OF THE UNITED STATES

_____

### No. 25A11

_____

## DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES, ET AL. *v.* MARY BOYLE, ET AL.

### ON APPLICATION FOR STAY

### [July 23, 2025]

JUSTICE KAGAN, with whom JUSTICE SOTOMAYOR and JUSTICE JACKSON join, dissenting from the grant of the application for stay.

Once again, this Court uses its emergency docket to destroy the independence of an independent agency, as established by Congress. Two months ago, in *Trump* v. *Wilcox*, the majority issued a stay allowing the President to discharge, without any cause, Democratic members of the National Labor Relations Board (NLRB) and the Merit Systems Protection Board (MSPB). See 605 U. S. \_\_\_, \_\_\_ (2025) (slip op., at 1). Today, the same majority's stay permits the President to fire, again without cause, the Democratic members of the Consumer Product Safety Commission (CPSC). Congress provided that the CPSC, like the NLRB and MSPB, would operate as "a classic independent agency—a multi-member, bipartisan commission" whose members serve staggered terms and cannot be removed except for good reason. *Id.*, at \_\_\_ (KAGAN, J., dissenting from grant of application for stay) (slip op., at 2); see 15 U. S. C. §2053(a) (requiring "neglect of duty or malfeasance"). In Congress's view, that structure would better enable the CPSC to achieve its mission—ensuring the safety of consumer products, from toys to appliances—than would a single-party agency under the full control of a single President. The CPSC has thus operated as an independent agency for many decades, as the NLRB and MSPB also did. But this

year, on its emergency docket, the majority has rescinded that status.  By allowing the President to remove Commissioners for no reason other than their party affiliation, the majority has negated Congress's choice of agency bipartisanship and independence.

In doing so, the majority has also all but overturned *Humphrey's Executor* v. *United States*, 295 U. S. 602, 626 (1935), a near-century-old precedent of this Court.  As I explained in *Wilcox*, we held in *Humphrey's* that independent agencies like the CPSC (and NLRB and MSPB) do not violate the Constitution's separation of powers.  See 605 U. S., at ___, ___ (dissenting opinion) (slip op., at 1, 3).  In creating such "quasi-legislative or quasi-judicial bodies" to implement legislative directives, *Humphrey's* explained, Congress may "forbid their [members'] removal except for cause."  295 U. S., at 626, 629.  Now, though, the opposite rule obtains: The majority, through its stays, has prevented Congress from prohibiting removals without cause.  On the Court's emergency docket—which means "on a short fuse without benefit of full briefing and oral argument"—the majority has effectively expunged *Humphrey's* from the U. S. Reports.  *Doe* v. *Mills*, 595 U. S. ___, ___ (2021) (BARRETT, J., concurring in denial of application for injunctive relief) (slip op., at 1).

And it has accomplished those ends with the scantiest of explanations.  The majority's sole professed basis for today's stay order is its prior stay order in *Wilcox*.  But *Wilcox* itself was minimally (and, as I have previously shown, poorly) explained.  See 605 U. S., at ___–___ (KAGAN, J., dissenting) (slip op., at 4–7).  It contained one sentence (ignored today) hinting at but not deciding the likelihood of success on the merits, plus two more respecting the "balance [of] the equities."  *Id.,* at ___–___ (order) (slip op., at 1–2); see *id.,* at ___–___ (KAGAN, J., dissenting) (slip op., at 4–7).  So only another under-reasoned emergency order undergirds today's.  Next time, though, the majority will have two (if still under-

reasoned) orders to cite. "Truly, this is 'turtles all the way down.'" *Rapanos* v. *United States*, 547 U. S. 715, 754 (2006) (plurality opinion). The majority rejects Congress's design of a whole class of agencies (except, as *Wilcox* somehow has it, the Federal Reserve) by layering nothing on nothing.

The result—an increase of executive power at the expense of legislative authority—does not stand alone. Just last week, this Court granted another stay allowing the President to ignore a federal statute. That decision permitted the President to push forward in dismantling the Department of Education, even though Congress created that agency and tasked it with performing vital functions. See *McMahon* v. *New York*, 606 U. S. \_\_\_, \_\_\_ (2025) (SOTOMAYOR, J., dissenting) (slip op., at 1). If the majority had any valid basis for taking that action (relating, say, to the breadth of the District Court's preliminary injunction) it did not appear on the face of the Court's unreasoned order. See *id.*, at \_\_\_ (order) (slip op., at 1); *id.*, at \_\_\_ (SOTOMAYOR, J., dissenting) (slip op., at 18). That order simply signaled that the President could carry on, even in the face of a conflicting statute. So too does this order, and with the same lack of care. The majority has acted on the emergency docket—with "little time, scant briefing, and no argument"—to override Congress's decisions about how to structure administrative agencies so that they can perform their prescribed duties. *Wilcox*, 605 U. S., at \_\_\_ (KAGAN, J., dissenting) (slip op., at 5). By means of such actions, this Court may facilitate the permanent transfer of authority, piece by piece by piece, from one branch of Government to another. Respectfully, I dissent.